Gagi OTIASHVILI, Petitioner,

v.

## BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES.

No. 04–1988.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 8, 2005.

Decided Feb. 25, 2005.

Leo L. Grigolia, Hackensack, NJ, for Petitioner.

Christopher C. Fuller, Douglas E. Ginsburg, and Lyle D. Jentzer, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before BARRY, FUENTES and BECKER, Circuit Judges.

OPINION OF THE COURT

BECKER, Circuit Judge.

Gagi Otiashvili, a citizen of Georgia, petitions for review of a final order of the Board of Immigration Appeals (BIA) affirming without opinion the decision of an immigration judge (IJ) ordering him removed from the United States and denying his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. We have jurisdiction under § 242(a)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a)(1) (2000), which provides the exclusive procedure for judicial review of all final removal orders. Our standard of review is highly deferential: "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 483–84 (3d Cir.2001). For the reasons that follow, we will the deny the petition.

Because the parties are fully familiar with the background facts and procedural history we need not set them forth, and limit our discussion largely to our *ratio decidendi.* The factual record portrays a dramatic series of events, emanating from assignment of Otiashvili, a physician, to investigate a case of possible drug use by two military cadets, which revealed: (1) that the cadets had purchased opium from a gas station owned by a former "major of police" named Shamil Kudjaidze; and (2) that the local police were involved in the drug trade. Otiashvili filed a confidential report with his superiors which led to a number of arrests of local police officers, including Tarasi Mgaloblishvili, the deputy chief of the Akhmeta police, who, Otiashvili claims, was Shamil Kudjaidze's partner in the drug trade. There succeeded a number of retaliatory events, which escalated into minor local warfare in the Pankisi Gorge area of Georgia. As a result of

threats against his life, Otiashvili sent his family to the Kharogouliski district, far from his village in the Pankisi Gorge, where he believed they were safe.

We do not gainsay that Otiashvili may have a legitimate fear of retaliation from the drug lord, Margoshvila. However, substantial evidence supports the IJ's conclusion that Margoshvila's threats were the result of a personal feud between the two men and did not implicate the government of Georgia, and additionally that they had nothing to do with Otiashvili's political opinion or alleged membership in a particular social group. At all events, the record does not compel a contrary conclusion. More specifically, Otiashvili offered no credible evidence that his actions against Margoshvila were predicated on his anti-corruption political convictions, or that Margoshvila imputed any political opinion or social group status to Otiashvili. Thus, although the threats may have been serious, they do not give rise to a legally cognizable ground for asylum because they were not made on account of any of the statutorily protected grounds.

Although Otiashvili complains that the Georgian government's withdrawal of troops from the Pankisi Gorge, together with its demand that he cease his military activities in that region made him an easy target for his enemies, that is not enough to connect the threats into action by the government of Georgia. The ability of the family to safely relocate to another area of Georgia despite the fact that Margoshvila had also threatened them indicates that Otiashvili too could relocate to another area of Georgia outside the Pankisi Gorge, where he would be safe from Margoshvila's threats.

For the foregoing reasons, Otiashvili is not eligible for asylum. Concomitantly, he is not eligible for withholding of removal, *see Zubeda v. Ashcroft*, 333 F.3d 463, 469–70 (3d Cir.2003). Finally, Otiashvili failed to establish his eligibility for protection under the Torture Convention, since he adduced no evidence of past torture or any indication that the Georgian government would torture him or tolerate his being tortured if he returned to Georgia. The petition for review will be denied.